# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN GAGO DE MEDEIROS, | CASE NO.    1:05-cv-00397-AWI-MJS (PC) |
| Plaintiff, | COMPLAINT DISMISSED WITH LEAVE TO AMEND |
| v. | (ECF No. 45) |
| JAMES A. YATES, WARDEN, et al., | |
| Defendants. | THIRD AMENDED COMPLAINT DUE WITHIN THIRTY DAYS |
| _____/ | |

### SCREENING ORDER

**I.    PROCEDURAL HISTORY**

Plaintiff Julian Gago De Medeiros ("Plaintiff") is a former state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's original complaint was filed on March 25, 2005.  (ECF No. 1.)  He filed a First Amended Complaint on March 30, 2005 (ECF No. 4); it was dismissed with leave to amend on April 11, 2008.  (ECF No. 10.)  Plaintiff filed a Second Amended Complaint on April 14, 2009.  (ECF No. 35.)  Then on July 17, 2009, he filed another amended complaint titled

1

1
2   "Second Amended Complaint."  (ECF No. 45.)  It is this July 17, 2009 Second Amended

Complaint that is now before the Court for screening.

3
4       For the reasons set forth below, the Court finds that Plaintiff has failed to state a

claim upon which relief may be granted.

5
6   **II.     SCREENING REQUIREMENTS**

7       The Court is required to screen complaints brought by prisoners seeking relief

8   against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

9   § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has

10  raised claims that are legally "frivolous or malicious," that fail to state a claim upon which

11
12  relief may be granted, or that seek monetary relief from a defendant who is immune from

13  such relief.  28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee, or any portion

14  thereof, that may have been paid, the court shall dismiss the case at any time if the court

15  determines that . . . the action or appeal . . . fails to state a claim upon which relief may be

16  granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

17
18      A complaint must contain "a short and plain statement of the claim showing that the

19  pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are

20  not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by

21  mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949

22  (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set

23
24  forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its

25  face.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  While factual

26  allegations are accepted as true, legal conclusions are not.  Iqbal, 129 S.Ct. at 1949.

27

III.    **SUMMARY OF COMPLAINT**

Plaintiff alleges his rights to Equal Protection and Due Process have been violated and that he is being retaliated against in violation of the First Amendment.  He names the following individuals as Defendants: James A. Yates, Warden; Gail Lewis, former Warden; M. Quincel, Holds and Warrants Desk; J. L. Clayons, CC-I Corrections Counselor; N. E. Villa, CC-II, Appeals Coordinator; G. Duran, CC-I, Corrections Counselor; H. Allison, CC-II, Corrections Counselor; J. L. Spells, CC-I, Corrections Counselor; K. M. Turner, CC-I, Corrections Counselor; H. Hatten, CC-I, Corrections Counselor; J. Hurl, R&R Corrections Sergeant; M. Gellerson, R&R Corrections Officer; and S. Ghidell, R&R Corrections Officer. All above Defendants were employed at Pleasant Valley State Prison ("PVSP") at the time of the complained of incidents.

Plaintiff also names the following individuals as Defendants:  California Board of Prison Terms; Paul Mena, Parole Unit Supervisor, Board of Prison Terms; D. H. McBean, Deputy Commissioner, Board of Prison Terms; J. Quintilliani, Deputy Commissioner, Board of Prison Terms; R. V. Mejia, Deputy Commissioner, Board of Prison Terms; Timothy O'Hara, Deputy Commissioner, Board of Prison Terms; R. Vazquez, Deputy Commissioner, Board of Prison Terms; T. J. Mackenberg, Deputy Commissioner, Board of Prison Terms; Jeanne S. Woodford, Director, California Department of Corrections; Edward Alameida, Jr., former Director, California Department of Corrections; and Does I through XXX.

Plaintiff makes the following specific allegations: On August 20, 1998, while Plaintiff was being held at PVSP, he was interviewed by U.S. Immigration and Naturalization

3

Service[1] ("INS") agents.  Plaintiff's INS file stated that he was a lawful permanent resident ("LPR").   One of the INS agents informed Plaintiff that the only reason for placing a detainer in his prison file was the state conviction, which, if not overturned on appeal, could act as grounds for initiation of removal proceedings.  At the time, Plaintiff was in the process of appealing his conviction.

On September 15, 1998, Plaintiff was summoned to the Correctional Counselor's Office and presented with a copy of the immigration detainer by Defendant Clayons. Plaintiff was directed to sign the detainer receipt (Form CDC-661) prepared by Defendant Quincel.  The form was dated September 11, 1998 and falsely stated that Plaintiff was the subject of an INS warrant for illegal entry into the United States.  Plaintiff denied that he had entered the United States illegally and refused to sign the form.  Plaintiff was not aware at the time that the California Department of Corrections and Rehabilitation automatically charged all alien LPRs with illegal entry.

On October 20, 2001 and again on December 19, 2001, Plaintiff was directed by Defendants Duran and Allison to sign Form CDC-1515 titled "Notice and Conditions of Parole."  This form included as a special condition of parole the prohibition of reentry into this country by Plaintiff without permission.  This special condition was approved on October 6, 2001 by Defendant Mena based on the false illegal entry charge.  Plaintiff refused to sign this form, specifically objecting to the special condition on the basis that he had not illegally entered the country.

///

---

[1]Now known as Immigration and Customs Enforcement or "ICE".

On February 1, 2002, a parole revocation hearing[2] was held before Defendant McBean. Plaintiff was charged with refusal to sign the Notice and Conditions of Parole form. During the hearing, Plaintiff repeatedly inquired about the legal basis and source of authority for the imposition of the prohibition against reentering the country. Plaintiff was informed that it resulted from the charge of illegal entry. Plaintiff objected and stated that the charge was false. He again refused to sign the form containing the special condition and was sentenced to six additional months of incarceration.

On April 23, 2002, Plaintiff was again directed by Defendants Duran and Allison to sign a new Notice and Conditions of Parole form with the exact same special condition. Plaintiff declined to sign and requested documentation supporting the illegal entry charge. Plaintiff was told to request the documentation from the prison records department. Plaintiff submitted a request for the documentation on May 1, 2002. A response was received on May 29, 2002 stating that all INS holds were issued for illegal entry and that Plaintiff should contact INS for further information. Plaintiff filed a grievance disputing the explanation. Defendant Villa refused to process the grievance claiming it was untimely. On July 9, 2002, Defendant Villa told Plaintiff not to resubmit the grievance "or else."

On June 17, 2002, another parole revocation hearing was held before Defendant Quintilliani for a new charge of refusing to sign the Notice and Conditions of Parole form. Plaintiff requested witnesses and documentation supporting the illegal entry charge. His requests were denied. He again refused to sign the form. Again, an additional six months

---

[2] Plaintiff refers to the hearings as "parole revocation hearings", and so the Court will do likewise. However, it does not appear to the Court that he was ever granted parole. If Plaintiff chooses to file an amended complaint, he should clarify whether he intends parole revocation or some other type of proceedings.

1   was added to his term of imprisonment.

2          The same process was repeated five times with the same result.   Specifically, on

3   October 4, 2002, May 30, 2003, and November 26, 2003, Defendant Spells directed

4   Plaintiff to sign the Notice and Conditions of Parole form with the special condition

5   precluding reentry; on May 18, 2003, Defendant Turner did the same; and on November

6   23, 2004, Defendant Hatten did so as well.  On each and every occasion, Plaintiff refused

7   to sign, and on each and every such occasion new parole violation charges were filed.

8

9          On February 10, 2003, Defendant Mejia conducted a parole revocation hearing.  On

10  July 25, 2003, January 12, 2004, and December 17, 2004, Defendant O'Hara conducted

11  the revocation hearings.  On July 12, 2004, Defendant Vazquez conducted the hearing.

12  During each hearing, Plaintiff requested that he be allowed to present material witnesses

13  (Defendants Quincel, Clayons, and Mena) who would have testified as to the source and

14  validity of the illegal entry charge; each time Plaintiff's request was denied.  Each hearing

15  resulted in an additional six months of incarceration for Plaintiff's refusal to sign.

16

17         On March 11, 2005, Plaintiff received a letter from Defendant Hurl informing him of

18  prison officials' intent to dispose of Plaintiff's boxes of legal materials related to his cases.

19  Plaintiff filed a grievance in response to this letter.

20

21         Plaintiff seeks a temporary restraining order, preliminary injunction, other injunctive

22  relief, declaratory relief, compensatory and punitive damages, costs, and attorney fees.

23  **IV.   ANALYSIS**

24

25         The Civil Rights Act under which this action was filed provides:

26                 Every person who, under color of [state law] . . . subjects, or
                   causes to be subjected, any citizen of the United States . . . to
27                 the deprivation of any rights, privileges, or immunities secured

1
2

by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3
4
5
6

42 U.S.C. § 1983.  "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws."  <u>Sweaney v. Ada County, Idaho</u>, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).

7

### A.   Equal Protection Claim

8
9
10
11
12
13
14

Plaintiff alleges that his  Equal Protection rights under the Fourteenth Amendment are being violated.    Under  the  Equal  Protection  Clause,  "all  persons  similarly circumstanced shall be treated alike" by governmental entities.  <u>F.S. Royster Guano Co. v. Virginia</u>, 253 U.S. 412, 415 (1920).  However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." <u>Tigner v. Texas</u>, 310 U.S. 141, 147 (1940).

15
16
17
18
19
20
21
22

Equal protection claims alleging disparate treatment or classifications are subject to a heightened standard of scrutiny when they involve a "suspect" or "quasi-suspect" class, such as race or national origin, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution.  <u>See, e.g.</u>, <u>City of Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 440 (1985).  The heightened standard of strict scrutiny requires the State to show that the classification is narrowly tailored to serve a compelling government interest.  <u>Grutter v. Bollinger</u>, 539 U.S. 306, 326 (2003).

23
24
25
26
27

Where the inmate is not a member of a protected class, an equal protection claim is subject to the rational basis test.  <u>See</u> <u>McGinnis v. Royster</u>, 410 U.S. 263, 270 (1973) (applying rational basis test where state law denied certain state prisoners good-time credit toward  parole  eligibility  for  the  period  of  their  presentence  county  jail  incarceration,

7

whereas those released on bail prior to sentence received good-time credit for the entire period of their prison confinement).  Under a rational basis inquiry, in order to prevail on an equal protection claim, Plaintiff must demonstrate that (1) he is similarly situated to others, (2) he is being treated worse than others to whom he is similarly situated, and (3) there is no rational basis for the disparate treatment.  More v. Farrier, 984 F.2d 269, 271 (8th Cir. 1993).  Stated another way, prison officials need show only a rational basis for dissimilar treatment of other similarly-situated persons in order to defeat the merits of Plaintiff's claim.  Id., 984 F.2d at 271.

Plaintiff argues that the classification scheme employed by the California Department of Corrections and Rehabilitation and the Board of Prison Terms ("CDCR/BPT") is unconstitutional facially and "as-applied" to him.

### 1.    Facial Unconstitutionality

Plaintiff contends that the CDCR/BPT classification scheme required that, as a special condition of his parole, he not be allowed to reenter the country without consent. Plaintiff claims that upon receiving an immigration detainer (INS hold), the CDCR/BPT officials automatically prepare a Form CDC-661 ("detainer receipt") with false and fabricated charges of illegal entry, which the inmate is required to sign.  Then, at the time of parole, officials require another signature on Form CDC-1515, including special conditions of parole.  He argues that either the scheme and/or the special condition is not related to any legitimate penological goal or compelling state interest, that it causes an undue burden, and denies basic constitutional and statutory protections otherwise afforded to other citizens.  Plaintiff contends that this is due to discrimination against alien inmates, foreign-nationals, and inmates with LPR status.  Moreover, he claims that this classification

8

scheme is designed to deny essential parole services and basic survival necessities to prisoners with LPR status.

The only regulation Plaintiff refers to directly is Title 15, § 3815 of the California Code of Regulations. Section 3815 governs limitations of parole services rendered to illegal aliens upon parole. However, it does not address the classification of aliens.

It appears Plaintiff's primary complaint is with the classification given him by INS, not any classification made by CDCR/BPT. Complaints about the classification should be addressed to INS. Plaintiff was so advised on May 2, 2002: "All USINS holds are issued for 'Illegal Entry.' You will have to take up this charge with USINS. We have nothing to do with the charge." (ECF No. 45, p. 29; Pl.'s Compl. Exh. A, p. 3.)

The Court will grant Plaintiff one more opportunity to amend with the instruction that this time he re-examine his claim and determine where it should properly be directed. If he determines it should be directed at INS, he must initiate and pursue administrative and judicial proceedings pertaining thereto independently of this claim. If he concludes he has a valid legal basis for challenging the way CDCR/BPT acts upon the INS classification, he must specifically identify the legal authority for the challenge, not just itemize the instances in which he was directed to take action he objected to and punished for not taking that action. He must specifically plead how the action, direction and/or punishment violated some constitutional right and specifically identify that right and explain how and why it protects him from the action taken.

2.   As-Applied

Plaintiff contends that the classification scheme used by CDCR/BPT is unconstitutional as applied to him.

9

In evaluating any discrimination claim, the Court must initially determine the appropriate level of scrutiny applicable to the challenged rule or government conduct.  To determine whether there has been a violation of the Equal Protection Clause, the Court must first consider whether the classification is based on a suspect class or implicates fundamental rights.  See Nordlinger v. Hahn, 505 U.S. 1, 10 (1992); Patel v. Penman, 103 F.3d 868, 875 (9th Cir. 1996).  If the classification is based on a suspect class or implicates fundamental rights, the classification is evaluated under a heightened standard. Nordlinger, 505 U.S. at 10.  If the classification is not based on a suspect class and does not implicate fundamental rights, it is evaluated under the "rational basis" standard, i.e., the plaintiff prevails only if he establishes the challenged classification is not rationally related to a legitimate state interest.  Patel, 103 F.3d at 875.

a.    Heightened Scrutiny

Plaintiff argues that he is a member of a suspect class.  Plaintiff describes himself as a "foreign born alien and long-time lawful permanent resident" of the United States. (ECF No. 45, p. 5.)  He states that his foreign national origin, legal alien status, and protected minority class make him part of a suspect class so as to require the heightened standard of scrutiny as described above.

Both race and alienage are suspect classes for the purposes of the equal protection clause.  See Graham v. Richardson, 403 U.S. 365, 372 (1971) (alienage is a suspect classification); Loving v. Virginia, 388 U.S. 1, 11 (classification based on race is suspect). However, "classifications among aliens pursuant to immigration laws 'need only be supported by some rational basis to fulfill equal protection guarantees.'"  United States v. Barajas-Guillen, 632 F.2d 749, 752 (9th Cir. 1980) (quoting Alvarez v. District Director, U.S.

10

I.N.S., 539 F.2d 1220, 1224 (9th Cir. 1976)).  Thus, lawful permanent residents are not a suspect class.  Chavez-Perez v. Ashcroft, 386 F.3d 1284, 1292 (9th Cir. 2004).

To succeed on an equal protection claim based on his race and/or alienage, both of which are suspect classes, Plaintiff is required to show that the challenged policy is not narrowly tailored to serve a compelling government interest.  Grutter, 539 U.S. at 326.  In this case, Plaintiff has failed to allege what policy he is challenging, how it treats him differently on the basis of his race and/or alienage (as opposed to his immigration status), and why it is not tailored to serve a compelling state interest.   While Plaintiff claims that he is a member of two protected classes, he does not allege that the disparate treatment he receives is based on such membership.  Instead, he appears to allege that he is being subjected to unequal treatment on the basis of his immigration status.  As discussed above, immigration status is not a protected class.

b.    Rational Basis

Because lawful permanent residents are not a protected class, any regulation that treats someone differently based on his immigration status is evaluated under the rational basis test.  Chavez-Perez, 386 F.3d at 1292 ("different treatment of groups of aliens must be upheld unless it is 'wholly irrational.'").  Under a rational basis inquiry, in order to prevail on an equal protection claim, Plaintiff must demonstrate that (1) he is similarly situated to others, (2) he is being treated worse than others to whom he is similarly situated, and (3) there is no rational basis for the disparate treatment.  More v. Farrier, 984 F.2d 269, 271 (8th Cir. 1993).

Plaintiff has failed to satisfy any of the three prongs of the rational basis test. Plaintiff asserts that he is being treated differently, but does not explain how.  He does not

11

state how other LPR inmates are treated, how non-LPR inmates are treated, what happens when other inmates (regardless of immigration status) disagree with the special conditions on their forms, or if they receive the same 6 months if they refuse to sign, etc. In sum, Plaintiff fails to allege what prisoners he is similarly situated to and how those prisoners are being treated differently than him.

Plaintiff makes the bare conclusory allegation that there is no rational basis for treating lawful permanent residents differently from other prisoners.   However, the allegation alone is insufficient to satisfy his obligation under the rational basis test.  Further, it appears to the Court that there may well be many reasons to treat foreign national prisoners differently than national prisoners when related to parole.  See Lizarrago-Lopez v. U.S., 89 F.Supp.2d 1166 (D. Cal. 2000); McLean v. Crabtree, 173 F.3d 1176 (9th Cir. 1999).

c.      "Class of One"

Plaintiff's claims could also be cognizable under the "class of one" theory of equal protection.  If a plaintiff has facts showing that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," then he may proceed under equal protection as a "class of one."  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  Again, Plaintiff has failed to state that other inmates are treated differently, regardless of class, and he also fails to specify the classification scheme on which his claims are based.

d.  Summary re "As-Applied" Criteria

Plaintiff's allegations fail to state a claim for violation of Equal Protection as applied to the protected classes of race and alienage, under the rational basis test or otherwise.

12

He has failed to state that other inmates are treated differently regardless of class, and he also fails to specify the classification scheme on which he bases his claims.  Plaintiff will be given leave to amend again if, after reviewing the foregoing, he feels he can correct the deficiencies noted herein.

### B.   Due Process Claims

In asserting  that he was denied access to witnesses and evidence and to the basis for the illegal entry charge and resulting special conditions, it appears that Plaintiff may be claiming he was not afforded fair parole revocation hearings.

The law is clear that there is no federal constitutional right to parole.  Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979).  An inmate can bring a procedural due process challenge to a parole decision only where there is a state-created liberty interest in parole.  See Board of Pardons v. Allen, 482 U.S. 369, 380-81 (1987); Sass v. California Board of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006) (If a state statute governing parole uses mandatory language like "shall" to "create a presumption that parole release will be granted," then an inmate has a liberty interest in parole and may bring a procedural due process challenge to a parole decision.).

Before an inmate may bring a due process claim arising from a parole denial, he must show that there is a state-created liberty interest in parole.  See Wilson v. Schwarzenegger, 2010 WL 5422511, *5-*6 (C.D. Cal. Nov. 16, 2010) (The Wilkinson v. Dotson case does not address or supersede the liberty interest analysis but merely identifies parole claims that are not barred by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)).

The United States Supreme Court in Morrissey v. Brewer established minimum due

process requirements for parole violation hearings.  See 408 U.S. 471 (1972).  Because

the revocation of parole is not part of a criminal prosecution, the "full panoply of rights due

a defendant in such a proceeding does not apply."  Morrissey, 408 U.S. at 480.  Morrissey

divided parole violations into two stages: the first, when the parolee is arrested and

detained; and the second, when parole is formally revoked.  According to the Morrissey

Court, during the first stage, due process is satisfied if the parolee receives a preliminary

hearing to determine whether there is probable cause to believe that the parolee

committed the act or acts which would violate parole.  Id. at 485-87.  In connection with this

preliminary hearing, the parolee should receive notice of the time and place of the hearing

and the allegations against him; the parolee should be allowed to appear at the hearing

and speak on his own behalf as well as present letters, documents, or witnesses in

support; upon the parolee's request, any adverse witness should be made available for

questioning in the parolee's presence unless the witness would be subjected to risk of

harm by having his or her identity disclosed; the hearing should be presided over by an

independent hearing officer; and the hearing officer must determine whether there is

probable cause for a parole revocation hearing and prepare a summary or digest of the

decision.  Id. at 486-87.

As for the second stage, the formal revocation hearing, Morrissey stated that the

"minimum requirements" of due process consist of the following: written notice of the

claimed violation of parole; disclosure of the evidence against the parolee; an opportunity

to be heard in person and to present witnesses and documentary evidence; the right to

confront and cross-examine adverse witnesses, unless the government shows good cause

for not producing the witness; a neutral and detached hearing body; and a written

14

statement by the fact-finders as to the evidence relied on and the reasons for revoking parole. Id. at 489.

California's requirement that inmates must sign the Notice and Conditions of Parole form does not violate federal law or the constitution. See Reed v. Kernan, 2008 WL 906098, *4 (E.D. Cal. April 2, 2008) ("As to the generic question of whether the CDC could require petitioner to sign a form stating conditions of parole, the answer is 'yes.'"). As noted by the Morrissey Court, parolees "are subjected to specified conditions" while on parole that "restrict their activities substantially beyond the ordinary restrictions imposed by law on an individual citizen." Morrissey, 408 U.S. at 478. "The enforcement leverage that supports the parole conditions derives from the authority to return the parolee to prison to serve out the balance of his sentence if he fails to abide by the rules." Id. at 478-79. Moreover, Plaintiff has not cited, and the Court is unaware of, any federal authority that limits a state's right to impose appropriate restrictions on the liberty of parolees.

Plaintiff states that he was denied the right to have Defendants Quincel, Clayons, and Mena appear and testify to the source and validity of the illegal entry charge. The Court is unable to envision how these witnesses or their testimony could be material. As noted, the illegal entry charge was made by INS, not prison officials, not Quincel, Clayons, and Mena. Plaintiff did not request that an INS agent testify.

Plaintiff has not stated a due process violation claim. He will be given leave to amend his complaint to state such a claim.

## C.    Legal Property Claims

Plaintiff challenges the constitutionality, facially and "as-applied," of Title 15, Section 3161 of the California Code Regulations. Plaintiff states that the rule on its face gives

"unfettered discretion and unbridled authority to prison officials" when determining what legal property inmates can retain.

Plaintiff is no longer an inmate with the CDCR.  As far as the Court knows, Plaintiff is in the custody of INS.  Plaintiff claims that CDCR must hold his boxes of legal materials as they are pertinent to his ongoing cases.  The prison system had an obligation to hold on to Plaintiff's voluminous materials for the three years prior to December 20, 2008. (ECF No. 45, pp. 52-62, ; Pl.'s Compl. Exh. D.)  Plaintiff was so notified and given ample time to figure out where to have the voluminous materials sent.  As evidenced by his last motion, he has not availed himself of the opportunity, but instead repeatedly filed requests to enjoin the prison from destroying his materials.  The Court has denied those requests.

It appears to the Court that CDCR has met its obligations by holding Plaintiff's eighty-six boxes of legal materials for three years.  Plaintiff has identified no basis for imposing on CDCR a continuing legal obligation to maintain his files.  The Court is unaware of any such basis.  CDCR has given Plaintiff a viable option to obtain and maintain the files himself.

Plaintiff also makes the bare allegation that the CDRC's position on his files violates his First Amendment right of access to the courts, is conspiratory, retaliatory, and discriminatory.  Plaintiff fails to support these allegations with any analysis or explanation. Thus, these claims fail.  The Court will grant Plaintiff leave to amend this claim.

### D.    Miscellaneous Federal Claims

Plaintiff refers or asserts violations under 42 U.S.C. §§ 1981, 1985, and 1986.  He fails, however, to allege facts which would support such violations.

1.    Section 1981

Section 1981 prohibits racial discrimination by private parties and state actors in the making and enforcement of contracts.  Pittman v. Oregon, Employment Dep't., 509 F.3d 1065, 1067 (9th Cir. 2007) (citations omitted).  Plaintiff fails to allege any facts indicating he may have been a victim of racial discrimination in the making and/or enforcement of a contract.  Thus, Plaintiff fails to state a cognizable claim under 42 U.S.C.  § 1981.

2.      Section 1985(2) & (3)

Section 1985 proscribes conspiracies to interfere with an individual's civil rights. Section 1985(2) proscribes conspiracies for the purpose of impeding the due course of justice in any state with the intent to deny equal protection of the laws, and Section 1985(3) proscribes conspiracies to deny equal protection of the law or equal privileges and immunities.  Coverdell v. Dep't. of Soc. and Health Svcs., State of Washington, 834 F.2d 758, 767 (9th Cir. 1987).  An allegation of racial or class-based discrimination is required to state a claim for relief under either the second clause of Section 1985(2) or Section 1985(3).  Bretz v. Kelman, 773 F.2d 1026, 1028-1030 (9th Cir. 1985).

To state a cause of action under Section 1985(3), Plaintiff must allege:  (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States.   Gillispie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980); Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971).  Section 1985 applies only where there is a racial or other class-based discriminatory animus behind the conspirators' actions.  Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

In interpreting these standards, the Ninth Circuit has held that a claim under Section

17

1  1985 must allege specific facts to support the allegation that defendants conspired
2  together. <u>Karim-Panahi v. Los Angeles Police Dept.</u>, 839 F.2d 621, 626 (9th Cir. 1988).
3  A mere allegation of conspiracy without factual specificity is insufficient to state a claim
4
5  under 42 U.S.C. § 1985. <u>Id.</u>; <u>Sanchez v. City of Santa Anna</u>, 936 F.2d 1027, 1039 (9th Cir.
6  1991).

7      Plaintiff has failed to satisfy the requirements of a Section 1985(2) or (3) claim.
8  He offers only a broad allegation of conspiracy in relation to the deprivation of equal
9  protection.  He does not allege the existence of conspiracy which is racially-motivated or
10 otherwise attributable to Plaintiff's status in a protected class.  As such, Plaintiff has failed
11
12 to state a cognizable claim under Section 1985(2) or (3).

13      3.      <u>Section 1986</u>

14      "Section 1986 authorizes a remedy against state actors who have negligently failed
15 to prevent a conspiracy that would be actionable under § 1985." <u>Cerrato v. San Francisco</u>
16 <u>Cmty. Coll. Dist.</u>, 26 F.3d 968, 971 n. 7 (9th Cir. 1994).  Plaintiff may not pursue a claim
17
18 for relief under 42 U.S.C. § 1986 unless he has first stated a claim for relief under section
19 1985. <u>McCalden v. California Library Assoc.</u>, 955 F.2d 1214, 1223 (9th Cir. 1992).  As
20 noted, Plaintiff's complaint does not state a cognizable claim for relief under Section 1985.
21 Accordingly, Plaintiff's complaint fails to state a claim for relief under Section 1986.

22      **E.      Doe Defendants**

23      Plaintiff lists as Defendants, Does I through XXX.  "As a general rule, the use of
24 'John Doe' to identify a defendant is not favored." <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 642
25 (9th Cir. 1980).  "It is permissible to use Doe defendant designations in a complaint to refer
26
27 to defendants whose names are unknown to plaintiff.  Although the use of Doe defendants

is acceptable to withstand dismissal of a complaint at the initial review stage, using Doe defendants creates its own problem:  those persons cannot be served with process until they are identified by their real names." Robinett v. Correctional Training Facility, 2010 WL 2867696, *4 (N.D. Cal. July 20, 2010).

Plaintiff is advised that Does I through XXX can not be served by the United States Marshal until he has identified them as an actual individuals and amended his complaint to substitute the Defendants' actual names.  The burden remains on Plaintiff to promptly discover the full name of Does I through XXX; the Court will not undertake to investigate the names and identities of unnamed defendants.  Id.  The Court will grant Plaintiff leave to amend this claim and attempt to set forth sufficient identification.

**F.    Personal Participation and Supervisory Liability**

Plaintiff's Complaint includes a long list of Defendants many of whom are not named in the statement of the case, including: Yates, Lewis, Gellerson, Ghidell, Woodford, Alameida, California Board of Prison Terms, Mackenberg, and Does I through XXX.  This leads the Court to assume that Plaintiff is arguing that these listed Defendants are liable for the conduct of subordinates as, according to Plaintiff's statement of facts, none of them were present and did not participate in any of the complained of conduct.  In fact, the listed Defendants were not mentioned at all in the factual allegations that make up Plaintiff's Complaint.

Under Section 1983, Plaintiff must demonstrate that each named Defendant personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer.

Iqbal, 129 S.Ct. at 1949.   "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."   Id. at 1948.   Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights.   Id. at 1948-49.

When examining the issue of supervisor liability, it is clear that the supervisors are not subject to vicarious liability, but are liable only for their own conduct.   Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001); Wesley v. Davis, 333 F.Supp.2d 888, 892 (C.D.Cal. 2004).   In order to establish liability against a supervisor, a plaintiff must allege facts demonstrating (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.   Jeffers, 267 F.3d at 915; Wesley, 333 F.Supp.2d at 892.   The sufficient causal connection may be shown by evidence that the supervisor implemented a policy so deficient that the policy itself is a repudiation of constitutional rights.   Wesley, 333 F.Supp.2d at 892 (internal quotations omitted).   However, an individual's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement.   Id. (internal quotations omitted).

Supervisor liability under Section 1983 is a form of direct liability.   Munoz v. Kolender, 208 F.Supp.2d 1125, 1149 (S.D.Cal. 2002).   Under direct liability, Plaintiff must show that Defendant breached a duty to him which was the proximate cause of his injury.   Id.   "'The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to

inflict the constitutional injury.'" Id. (quoting Johnson v. Duffy, 588 F.2d 740, 743-744 (9th Cir. 1978)).

Further, Plaintiff has not alleged facts demonstrating that many of the listed Defendants personally acted to violate his rights.  Plaintiff does not allege that Defendants Clayons, Quincel, Duran, Allison, Mena, Spells, Turner, Hatten, and Hurl violated his rights in any way.  Pursuant to Plaintiff's statement of the case Clayons, Duran, Allison, Spells, Turner, and Hatten asked Plaintiff to sign a allegedly false form; Quincel and Mena prepared the forms; and Hurl sent Plaintiff a letter regarding the possible disposal of his legal boxes.  As pleaded, these actions are not linked to any violation of Plaintiff's constitutional rights and are not violations in themselves.  In his Amended Complaint, Plaintiff needs to specifically link each Defendant to a violation of his rights.  Plaintiff shall be given the opportunity to file an amended complaint curing the deficiencies in this respect.

    **G.    Eleventh Amendment Immunity**

Plaintiff names the California Board of Prison Terms as a Defendant.  The California Board of Prison Terms is entitled to Eleventh Amendment immunity.  Brown v. California Dept. Of Corrections, 554 F.3d 747, 751 (9th Cir. 2009); see Dittman v. California, 191 F.3d 1020, 1025-26 (9th Cir. 1999) ("In the absence of a waiver by the state or a valid congressional override, under the eleventh amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court. The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court, and the Supreme Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity[.]") (citations, alteration,

and internal quotation marks omitted); see also Pittman v. Oregon Employment Dep't, 509 F.3d 1065, 1071 (9th Cir. 2007) ("[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.") (citation omitted).   Thus, Defendant Board of Prison terms should be omitted from Plaintiff's amended complaint.

## V.   CONCLUSION AND ORDER

The Court finds that Plaintiff's Complaint fails to state any Section 1983 claims upon which relief may be granted.   The Court will provide Plaintiff one more opportunity to file an amended complaint to address the potentially correctable deficiencies noted above. See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).   In his Amended Complaint, Plaintiff must demonstrate that the alleged incident or incidents resulted in a deprivation of his constitutional rights.   Iqbal, 129 S.Ct. at 1948-49.   Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'"   Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).   Plaintiff must also demonstrate that each defendant personally participated in the deprivation of his rights.   Jones, 297 F.3d at 934.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims or defendants.   Plaintiff should focus the amended complaint on claim and defendants discussed herein.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.   As a general rule, an amended complaint supersedes the original complaint.   See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).   Once an amended complaint is filed, the original complaint no longer serves any function in the case.   Therefore, in an amended complaint, as in an original

complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Third Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1.   Plaintiff's complaint is dismissed for failure to state a claim, with leave to file an amended complaint within thirty (30) days from the date of service of this order;

2.   Plaintiff shall caption the amended complaint "Third Amended Complaint" and refer to the case number 1:05-cv-397-AWI-MJS (PC); and

3.   If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated:   February 2, 2011          /s/ *Michael J. Seng*

ci4d6                              UNITED STATES MAGISTRATE JUDGE

23